UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID A. JOHNSTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:09CV2080 JCH |
| | ) |
| DON ROPER, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner David A. Johnston's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2254, filed December 18, 2009 (Doc. No. 1 ("Motion")) and Motion to Remand and Suggestion in Support Thereof (Doc. No. 12 ("Motion to Remand")). Because this Court has determined that Johnston's claims are inadequate on their face and the record affirmatively refutes the factual assertions upon which Johnston's claims are based, this Court decides this matter without an evidentiary hearing.[1]

## **BACKGROUND**

The Missouri Court of Appeals provided a detailed description of the background facts of Johnston's offenses:[2]

---

[1]"A district court does not err in dismissing a movant's motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Buster v. U.S., 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting Sanders v. U.S., 341 F.3d 720, 722 (8th Cir. 2003)(citation and quotation marks omitted); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (in a § 2254 case, holding that "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . . contentions that in the face of the record are wholly incredible.").

[2]We presume the Missouri court's factual findings are correct and it is Johnston's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A neighbor of [Johnston], Hubert Shoop (Mr. Shoop), stated that on May 19, 2004, he had heard some yelling coming from the direction of [Johnston's] trailer that sounded like kids playing, and he looked over to see a woman rolling around on the ground outside the trailer, and a man come out of the trailer and then go back into the trailer with the woman. Carlene Shoop (Mrs. Shoop) said she saw smoke coming out of the door of the trailer.

On that same day, [Johnston] and his live-in girlfriend, Crystal Smallwood (Smallwood), arrived at the home of Donna White (White). Smallwood was yelling to be let in the residence because she needed to cut her clothes off and get in the shower. White immediately noticed that something was wrong with Smallwood because "[h]er face was kind of dark like it had been char[re]d like a fire." White noticed that Smallwood had several burns over parts of her body, some of them severe. White told Smallwood that she did not know how to help her treat her burns, but Smallwood told White that she knew how to treat them and instructed White on everything she would need. White and another woman, Morgan McKenna, both advised Smallwood that she needed to go to the hospital, but Smallwood refused to do so.

Initially, Smallwood told White that she had been burned when a camp stove blew up at a campfire at Siloam Springs. Later, however, Smallwood told White that what had actually happened was that she was lighting a cigarette in the trailer she shared with [Johnston] and some fumes in the small area ignited. Smallwood said that she ran out of the door of the trailer, cutting her arm on the way out, then rolled around in the grass trying to put the fire out. Smallwood stated that after she had extinguished the fire on her clothing, she started to go back in the trailer when [Johnston] "threw some juice of some kind" that landed on her and caused her to ignite again. Smallwood said she again rolled around in the grass and [Johnston] sprayed her with a fire extinguisher.

Later that evening, Smallwood insisted to [Johnston] that he go get her something that "she had to have." [Johnston] reluctantly left, and returned in the amount of time it would have taken to go back to his trailer and return to White's home. When [Johnston] returned, he brought with him some coffee filters that were burned around the edges with methamphetamine on them. Smallwood then seemed to calm down.

Later, [Johnston] told White the same story about how Smallwood had been burned as Smallwood had told White. [Johnston] did not mention what they had been doing prior to the explosion, but White suspected that methamphetamine was involved.

White continued to monitor Smallwood and requested several times that she go to the hospital, but Smallwood refused, saying "she didn't want to be arrested at that point." The next day, Smallwood's condition appeared to White to deteriorate. When White told Smallwood that she looked worse,

---

Garrison v. Burt, No. 10-1709, 2011 U.S. App. LEXIS 4487, at *6-7 (8th Cir. Mar. 8, 2011) (citing Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010); 28 U.S.C. §2254).

Smallwood told her "I've been burned three times before," and "I know what to do," and "it will look better tomorrow. It always looks worse the day afterwards."

At one point, White could not get Smallwood to wake up and she voiced her concerns to [Johnston]. [Johnston] told her not to worry about it because [w]hen she's been tweaking for a while she sleeps really hard and a long time." White explained that "tweaking" meant when a person had "been up for several days doing meth." When Smallwood was awake, "she kept insisting that she'd been burned before like that."

On the afternoon of May 20th, Smallwood was mumbling and unable to communicate. White called a friend to help her, telling her that Smallwood was burned from "the fumes from the chemicals used to manufacture methamphetamine and the ignition of her lighter." White told [Johnston] that she intended to call the ambulance, and [Johnston] responded by saying "no, don't call the hospital," and "take her and put her under a tree or something ... because if you call the ambulance from your home it's going to come back on me once it gets to you." White refused [Johnston's] suggestion and called for an ambulance. [Johnston] then told White, "I'm getting the f— out of here," and he left. Smallwood was taken to the hospital, where she died shortly thereafter from organ failure caused by her severe burns. After Smallwood's death, the police attempted to locate [Johnston], but did not find him until June 6, 2004, after receiving information that [Johnston] had been seen at Mark Twain Park. [Johnston] was discovered camping, and it appeared that he had been camping for quite some time.

The police began their investigation at the trailer home of [Johnston] and Smallwood, located on the property of [Johnston's] father, Selmer Johnston [...]. [Johnston] and Smallwood's trailer was located directly behind a two-car garage on the property, which was a few feet to the west of [Selmer] Johnston's house. There was also a utility shed located on the property approximately twenty feet behind the house. [Selmer] Johnston gave the police his consent to search the property.

The search of the property revealed the following evidence. In the utility shed, there was a large garbage bag containing burned, broken glass, a charred or burned jar with methamphetamine liquid in it, a burned coffee filter, and a Bud Light bottle with an acidic odor and some type of tubing inside it. The police also found a drawer or dresser in the utility shed containing some women's clothing. After the police recovered those items, [Selmer] Johnston withdrew his consent to search the property, and the police obtained a search warrant for all of the buildings located on the property, including the trailer.

In the garage, the police found a stove[,] containing the casing of a lithium battery and a bag with the corner cut out of it. In the trailer, the police found several receipts. The first, dated May 7, 2004, showed a purchase of a four-pack of lithium batteries. The second, dated April 25, 2004, showed the purchase of small tubing and starter fluid. The third, dated May 15, 2004, showed the purchase of four lithium batteries. The fourth, dated May 13,

> 2004, showed the purchase of two packages of pseudoephedrine tablets. The fifth, dated May 13, 2004, showed, the purchase of four lithium batteries. The sixth, dated May 16, 2004, showed the purchase of two cans of starting fluid and more batteries.
>
> Inside the trailer, the police located rubber tubing, a marijuana bong, two chemist beakers, a glass test tube that had been modified into a smoking pipe with burned methamphetamine reside inside it, small pieces of curved glass, one piece of burned heavy glass consistent with the burned Mason jar found in the utility shed, and two newspaper articles related to people who had been arrested in the area. There was also a tablecloth on the table, with two-thirds of it cut away by a sharp object, like a knife. A piece of tablecloth, which matched that found in the trailer, was located in a trash barrel at the south end of the property.
>
> Smallwood's autopsy revealed small fragments of glass embedded in her skin that were indicative of her being very near to an explosion. Methamphetamine was found in her urine, but not in her blood, meaning Smallwood had consumed methamphetamine between twelve and twenty-four hours prior to her death.
>
> At trial, the fire investigator, Ronald McAfee (McAfee), testified that whatever had burned the steps leading into the trailer had to have been an ignitable liquid. McAfee also testified that the fire that occurred in the trailer was "probably a vapor fire of some type." White admitted that she frequently visited [Johnston] and Smallwood at their trailer to use methamphetamine, which was usually provided by [Johnston] and Smallwood.
>
> The jury found [Johnston] guilty of manufacturing a controlled substance and felony murder. The court sentenced [Johnston] as a persistent offender to twenty-five years on each count with the sentences to run consecutively.

Respondent's Exhibit E ("Resp. Ex. E."), pp. 2-6). On April 11, 2006, the Missouri Court of Appeals affirmed Johnston's convictions on direct appeal. Id., p. 2. On March 17, 2009, the Missouri Court of Appeals also affirmed the denial of Johnston's motion for post-conviction relief. Respondent's Exhibit I ("Resp. Ex. I").

On December 18, 2009, Johnston filed this Motion seeking relief based upon the following grounds:

(1) Johnston's direct-appeal counsel was ineffective for failing to argue that the trial court had erred in denying his motion to suppress items seized by the police;

(2) his direct-appeal counsel was ineffective for failing to argue that the trial court had erred in admitting photographs of the victim into evidence;

(3) the State's evidence was insufficient to sustain his conviction for manufacturing methamphetamine; and

(4) the State's evidence was insufficient to sustain his conviction for felony murder.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "'A state court's decision is contrary to … clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision … and nevertheless arrives at a [different] result.'" Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007)(quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new

context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that § 2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams, 529 U.S. at 412. "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

## DISCUSSION

I. **Motion to Remand**

Before discussing his claims supporting his writ of habeas corpus, the Court will address Johnston's Motion to Remand and Suggestions in Support Thereof ("Motion to Remand"). (Doc. No. 12).

Johnston requests a remand of the proceedings because his counsel waived eight (8) of his post-conviction claims and without all of the facts to support the four (4) claims preserved. (Motion to Remand, p. 2). With the filing of his motion to remand, Johnston is apparently seeking the opportunity to stay his § 2254 petition so that he can return to state court to exhaust previously unexhausted claims. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Rhines v. Weber, 544 U.S. 269, 277 (2005). Entitlement to a stay requires not only consideration

- 6 -

of whether petitioner had good cause for his failure to exhaust, but also whether his unexhausted claims are "plainly meritless," whether the claims are potentially meritorious, and whether the petitioner engaged in intentionally dilatory litigation tactics. Id. at 277-78.

Here, Johnston states that he cannot present effectively his §2254 motion because he is without several "facts" that should have been presented in State Court, but were not. (Motion to Remand, p. 2). Specifically, Johnston claims that Selmer Johnston was not the rightful owner of the property in question and did not have authority to consent to the search of the property. Moreover, Johnston claims that the true property owner, Aaron Johnston, had told Selmer Johnston not to let anyone on his property, including the police. (Motion to Remand, pp. 2-3). Johnston also alludes to other "facts" that would warrant remand, but does not identify any facts with particularity.

A remand is not appropriate in this case. The Court believe that Johnston's claims are plainly meritless. Johnston appears to be arguing that the evidence against him should be suppressed because Selmer Johnston did not have authority to permit the officers to search the property without a warrant. This argument, however, is contrary to the facts presented to the trial court and is not dispositive of the admissibility of the evidence.

According to the Missouri Court of Appeals, Selmer Johnston initially consented the search of the property. Selmer Johnston, however, withdrew that consent after the police found some incriminating materials. The police then obtained a search warrant for the garage and the trailer, where they discovered items used to make methamphetamine and evidence of a fire or explosion in the trailer. After Selmer Johnston revoked his consent to search the property, the police obtained the search warrant to search the rest of the property based upon information from an informant. (Resp. Ex. E, pp. 13-14; see also Respondent's Exhibit C ("Resp. Ex. C."), p. 23 (noting that probable cause for the search was based upon allegation from an informant that Johnston and Smallwood had been

manufacturing methamphetamine on the premises); that is, the warrant authorizing the search of the property was issued upon an independent showing of probable cause. See also United States v. Khabeer, 410 F.3d 477, 483 (8th Cir. 2005) (the independent source doctrine permits the use of evidence "initially discovered during an unlawful search, but later obtained independently through activities untainted by the illegality").

Under the independent source doctrine, the Court finds that the evidence seized from the property would have been admissible, even if Selmer Johnston were not the owner of the property and did not have authority to consent to the police search. Both of the following questions must be answered in the affirmative for the warrant to be an independent source: first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them. United States v. Swope, 542 F.3d 609, 613-14 (8th Cir. 2008), cert. denied, 129 S. Ct. 1018, 173 L. Ed. 2d 307 (2009) (citing Murray v. United States, 487 U.S. 533, 542, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988)). Here, both of the questions in the affirmative. First, the police would have applied for a search warrant to examine the trailer where Smallwood was burned as part of the investigation of her death. Second, based upon the information from the informant, the police would have been able to obtain a search warrant for the premises based upon a source independent from the allegedly improper search. (Resp. Ex. C., p. 23); United States v. Craig, 630 F.3d 717, 722 (8th Cir. 2011) ("absent the tainted information, there was probable cause to support the issuance of a search warrant[;] the second part of the independent source doctrine is satisfied"). Even if Selmer Johnston did not have the authority to consent to the search, the evidence recovered would not have been suppressed because the police could have obtained (and ultimately did obtain) a valid search warrant to inspect the property. Accordingly, the Court finds that there would be no basis to suppress the

evidence discovered by the police because they would have been able to obtain the same evidence through an independent source. Johnston's claim for remand on this basis is plainly meritless. Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (state court did not make a determination that was contrary to or an unreasonable application of federal law as determined by the Supreme Court when the state court dismissed the petitioner's claim for ineffective assistance of counsel because petitioner could not show that his counsel performed deficiently by failing to raise a meritless argument).

Johnston has not identified any other specific grounds for remand of this action. Therefore, the Court denies Johnston's Motion to Remand.

**II.     Motion for Habeas Corpus Relief**

    A.     Ineffective Assistance of Counsel

        1.     Standard

To support an ineffective assistance of counsel claim, a convicted movant must first show "that his counsel's performance was deficient, and that he suffered prejudice as a result." Paul v. U.S., 534 F.3d 832, 836 (8th Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)); U.S. v. Ledezma-Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005) (citations omitted)("The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense."). The movant must establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Malcom v. Houston, 518 F.3d 624, 626 (8th Cir. 2008). A reasonable probability is less than "more likely than not," Kyles v. Whitley, 514 U.S. 419, 434 (1995), but more than a possibility. White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005). A reasonable probability "is a probability sufficient to undermine

confidence in the outcome." Strickland, 466 U.S. at 694. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact" subject to *de novo* review. Id. at 698.

2. Motion to Suppress

Johnston asserts that his direct-appeal counsel was ineffective for failing to argue that the trial court erred in denying the motion to suppress evidence found during the search of Johnston's trailer and surrounding outbuildings. (Motion, p. 11). Plaintiff states that "[n]one of the items were in plain view and therefore would not support this unlawful search." (Motion, p. 13).

Johnston's direct appeal counsel was not deficient for failing to raise Johnston's motion to suppress on appeal. Initially, Selmer Johnston consented to the search. Voluntary consent to search is a well-recognized exception to the warrant requirement. United States v. Parker, 587 F.3d 871, 878 (8th Cir. 2009) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)). Moreover, as discussed previously, the police eventually obtained a search warrant and would have discovered the items, even without Selmer Johnston's consent. The police would have been able to obtain the evidence through an independent source because the police had probable cause from an informant to obtain a warrant. Swope, 542 F.3d at 613-14.

Accordingly, the Court finds that the Missouri Court of Appeals correctly applied the Strickland test and counsel cannot be ineffective for failing to raise a meritless argument. Thai, 412 F.3d at 979; Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994) ("Dyer's claims of ineffective assistance of counsel fail because we have just rejected as meritless the claim Dyer asserts counsel should have pursued."); Whitmore v. Lockhart, 8 F.3d 614, 624 (8th Cir. 1993)("Whitmore's attorneys were not ineffective for failing to raise such admittedly meritless claims."). Ground I of Johnston's §2254 motion is denied.

3.     Photographs

Johnston asserts that his direct-appeal counsel was ineffective for failing to argue that trial counsel erred in admitting photographs of the victim into evidence. (Motion, p. 15). Johnston claims that the photograph of the victim taken at the hospital was "highly prejudicial" because it was undisputed that the victim suffered severe burns over most of her body and it was unnecessary to produce further evidence of the burn injuries. (Id., pp. 15-16). Johnston claims that the photographs were "an attempt to inflame and incite the passions of the jury." (Id., p. 16).

Johnston raised this argument before the Missouri Court of Appeals on his appeal of the denial of his 29.15 motion. (Resp. Ex. I, pp. 5-6). The Missouri Court of appeals rejected his claim for several reasons. First, the motion court's determination that the photographs were admissible to show the burns suffered by the victim and to corroborate other admissible State's evidence was not clearly erroneous. (Id., p. 5).

In addition, Johnston's trial counsel only objected "generally" to the admission of the photographs, without stating any specific basis for his objection. (Id.). Because Johnston's trial counsel failed to state a specific objection, this matter was not preserved for appeal. State v. Brethold, 149 S.W.3d 906, 909 (Mo. Ct. App. 2004); State v. Driver, 912 S.W.2d 52, 54 (Mo. banc 1995) ("To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory."). Accordingly, the Missouri Court of Appeals found that appellate counsel could not be ineffective for failing to raise a meritless issue on appeal. "Appellate counsel is not ineffective for failing to raise unpreserved allegations of error." Tisius v. State, 183 S.W.3d 207, 213 (Mo. 2006)(citing Honeycutt v. State, 54 S.W.3d 633, 650 (Mo. Ct. App. 2001)).

Moreover, the Missouri Court of Appeals held that, even if Johnston's trial counsel properly had preserved his objection, "the admissibility of photographic evidence is within the broad discretion of the trial court and the photographs were used to show the injuries suffered by the victim and to support the testimony of the witnesses." (Resp. Ex. I, p. 6).

In summary, the Missouri Court of Appeals held that Johnston's appellate counsel could not be ineffective for failing to raise the issue of the photographs on appeal because that issue would not have been successful, and Johnston could not show any prejudice given the overwhelming evidence of his guilt. (Resp. Ex. I, p. 6).

The Court finds that the Missouri Court of appeals correctly applied the Strickland test and there is no evidence of that Johnston's appellate counsel was ineffective for failing to address the photographic evidence of the victim on appeal. First, counsel cannot be found to be deficient for failing to raise meritless arguments on appeal. As discussed, the trial counsel did not preserve the objection regarding the photographic evidence by making a specific objection. Therefore, appellate counsel could not raise this issue on appeal. Kitt v. Clarke, 931 F.2d 1246, 1250 (8th Cir. 1991) ("The appellate counsel cannot be blamed for an error of the trial counsel."). Under Strickland, counsel's failure to raise a meritless issue cannot constitute deficient performance. Dodge v. Robinson, 625 F.3d 1014, 1019 (8th Cir. 2010); Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) (counsel not ineffective for failing to raise meritless challenge); Thomas v. United States, 951 F.2d 902, 905 (8th Cir. 1991) (per curiam) ("Counsel's failure to raise these meritless issues does not constitute ineffective assistance.").

In addition, even if appellate counsel's performance were deficient, Johnston cannot establish prejudice necessary under the Strickland standard. That is, Johnston cannot establish that he would have prevailed if the photograph issue had been raised on direct appeal. The Missouri Court of

Appeals stated that the photographs were admissible to show the burns suffered by the victim and to corroborate other admissible State's evidence. (Resp. Ex. I, p. 5). Thus, the court concluded that if the photograph issue had been raised on direct appeal, it would not have been successful. (Id.). The Missouri Court of Appeals' reasoning was correct under federal law. See Rousan v. Roper, 436 F.3d 951, 959 (8th Cir. 2006)(on capital habeas corpus review, no error affecting petitioner's constitutional rights in the admission of photographs of the victims' decomposed bodies, which were probative because they corroborated the State's testimony); Kuntzelman v. Black, 774 F.2d 291, 292-93 (8th Cir. 1985) (per curiam) (finding no error of constitutional magnitude in the admission of "flagrantly gruesome" photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]"). Thus, any challenge of photograph issue on appeal would have been unsuccessful. (Resp. Ex. I, p. 6).

The Missouri Court of Appeals correctly determined that Johnston's photograph claim could not form the basis of an ineffective assistance of counsel claim under Strickland. Ground II of Johnston's §2254 motion is denied.

  B.  Insufficient Evidence

    1.  Standard of Review

Constitutionally, sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Because federal court can grant habeas relief only if there was an unreasonable application of clearly established federal law, this Court may grant relief only if it finds the Missouri Court of Appeals' conclusion that the evidence satisfied the Jackson sufficiency of evidence standard was "both incorrect and unreasonable." Cole, 623 F.3d at 1187; see Skillicorn v.

Luebbers, 475 F.3d 965, 977 (8th Cir. 2007) (recognizing the scope of review of the state court's determination of whether evidence was sufficient is "extremely limited").

        2.        Production of Methamphetamine

Johnston claims that the Missouri Court of Appeals erred in determining that there was sufficient evidence to sustain a conviction for manufacturing methamphetamine, which is a due process violation under the Fourteenth Amendment. (Motion, p. 18). Johnston notes that the police found equipment to produce methamphetamine and methamphetamine residue, but the police did not find any hydrochloric acid or salt or other solvents, which are required to produce methamphetamine. (Motion, pp. 19-20).

"'The crime of the manufacture of methamphetamine requires the state to prove the defendant: (1) manufactured methamphetamine and (2) was aware the substance he manufactured was methamphetamine.'" State v. Wenzel, 119 S.W.3d 650, 653 (Mo. Ct. App. 2003)(quoting Salmons v. State, 16 S.W.3d 635, 638 (Mo. Ct. App. 2000)). "The state must prove a defendant had actual or constructive possession of the materials being used to manufacture the substance." Wenzel, 119 S.W.3d at 653 (citing State v. Potter, 72 S.W.3d 307, 311-12 (Mo. Ct. App. 2002); State v. Smith, 33 S.W.3d 648, 653 (Mo. Ct. App. 2000)).

Johnston raised argued to the Missouri Court of Appeals that there was insufficient evidence to convict him for methamphetamine production, but the court found sufficient evidence to support a conviction. The court noted that a substance was found in Johnston's trailer that was determined to be methamphetamine at an early stage of production. (Resp. Ex. E., p. 8). Methamphetamine residue was also found at the site. (Id.). Trash found at the trailer was indicative of methamphetamine production. (Id.).

In addition, although Johnston argued to the Missouri Court of Appeals that he and Smallwood did not have access to the shed where the jar of liquid containing methamphetamine was

found, there was evidence to the contrary. A sweatshirt with blood stains was found in the shed. The blood sample from the sweatshirt was consistent with the blood sample from a piece of glass removed from Smallwood's arm. (Id.). The Missouri Court of Appeals held that a reasonable jury could infer that Johnston and Smallwood had access to the utility shed. (Id.). In addition, the Court of Appeals noted that a burned Mason jar found in the utility shed was consistent with a piece of burned heavy glass found in the trailer. (Id., pp. 8-9). The mere fact that others also had access to the shed does not diminish the value of the evidence found, particularly where there was evidence of production found in Johnston's trailer. State v. Potter, 72 S.W.3d 307, 312 (Mo. Ct. App. 2002)("A defendant's access to an area where drugs are found is an incriminating fact which is not destroyed by another individual's also having access to the area."); State v. Charlton, 114 S.W.3d 378, 386 (Mo. Ct. App. 2003) ("Sufficient evidence was presented to support the jury's inference of Appellant's knowledge of and control, whether joint or exclusive, over the manufacturing operation clearly present in Appellant's home.").

In addition, the Missouri Court of Appeals relied on circumstantial evidence to support a finding that Johnston and Smallwood produced methamphetamine in the trailer. (Motion, p. 9). Chief Deputy Robert Power and Special Agent Mark Bouyea, both narcotics investigators with extensive experience in methamphetamine labs and production, testified that they believed that methamphetamine had been manufactured in the trailer. (Id.). Also, White had testified that Johnston had returned to his trailer on May 19 to obtain some methamphetamine from a burned coffee filter. (Id., p. 10). This circumstantial evidence also supports the Missouri Court of Appeals finding that the trial court's judgment was not in error. See United States v. Crumley, 528 F.3d 1053, 1065 (8th Cir. 2008)("circumstantial evidence is just as probative as any other type of evidence").

Based on all of this evidence the Missouri Court of Appeals found that a jury reasonably could have inferred that the May 19, 2004 fire in the trailer that burned Smallwood was the result of

manufacturing methamphetamine and that Johnston was manufacturing methamphetamine on May 19, 2004. (Motion, p. 10). This Court finds the Missouri Court of Appeals' conclusion neither incorrect nor unreasonable. The overwhelming evidence supported Johnston's conviction for production of methamphetamine. Ground III of Johnston's §2254 motion is denied.

        3.        Felony Murder

Johnston claims that the Missouri Court erred in determining that there was sufficient evidence to sustain a conviction for felony murder, which is a due process violation under the Fourteenth Amendment. (Motion, p. 21). Johnston argues that there was insufficient evidence to prove that Smallwood's death was caused during a felony or that Johnston was involved in her death. (Motion, p. 23). Moreover, Johnston argues that Smallwood's death was caused by her refusal to seek medical treatment, not production of methamphetamine. (Motion, p. 23).

A person is guilty of second-degree murder if she commits any felony and, in the perpetration of that felony, another person is killed as a result of the perpetration of that felony. Mo.Rev.Stat. §565.021.1(2). "Under Missouri law, a defendant is responsible for any deaths that are the natural and proximate result of the commission of the felony." State v. Burrell, 160 S.W.3d 798, 803 (Mo. 2005)(citing State v. Black, 50 S.W.3d 778, 785 (Mo. banc 2001); State v. Blunt, 863 S.W.2d 370, 371 (Mo. App. 1993)). "An independent, intervening cause, however, can relieve a defendant from criminal responsibility for the death." Burrell, 160 S.W.2d at 803 (citing State v. Baker, 607 S.W.2d 153, 156 (Mo. banc 1980)). Missouri follows the proximate cause theory of felony murder in interpreting whether a death resulted from the perpetration of a felony. Blunt, 863 S.W.2d at 371. "Under that theory, the identity of the actual killer is irrelevant and Defendant may be considered responsible for any deaths which are the natural and proximate result of the felony." Id. (citing State v. Moore, 580 S.W.2d 747, 752 (Mo. banc 1979)).

Johnston argued to the Missouri Court of Appeals that Smallwood's refusal of treatment was an intervening cause of her death. (Resp. Ex. E, p. 11). The Missouri Court of Appeals held that the Smallwood's refusal to seek medical treatment was not an independent cause of her death, and that the manufacture of methamphetamine was the proximate cause of her death. (Id.). The Missouri Court of Appeals held that Smallwood's refusal to seek medical attention was, if anything, a contributing cause, not a the proximate cause, of her death. The manufacture of methamphetamine, and the resulting explosion and fire that burned Smallwood, were the proximate cause of her death. Thus, the Missouri Court of Appeals reasonably found that there was sufficient evidence to support Johnston's conviction for felony murder. (Id.). This Court finds the Missouri Court of Appeals' conclusion neither incorrect nor unreasonable. Count IV of Johnston's §2254 motion is denied.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner David A. Johnston's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Johnston's Motion to Remand and Suggestion in Support Thereof (Doc. No. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

Dated this 17th day of March, 2011.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE